MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 94
Docket:        Ken-16-161
Submitted
  On Briefs:   February 23, 2017
Decided:       May 11, 2017

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:      ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Concurrence/
  Dissent:     JABAR, J.

DONALD J. WILLIAMS

v.

LINDA WILLIAMS

GORMAN, J.

[¶1]  Donald J. Williams appeals from a judgment of the District Court (Augusta, *R.A. French, J.*) awarding Linda Williams $8,100 in interim spousal support and $6,000 in attorney fees.  In its judgment, the court concluded, first, that Donald should reimburse Linda for spousal support paid to her from funds later set aside to her in the divorce and, second, that Donald was in a better financial position than Linda to bear the cost of Linda's attorney fees.  As to the issue of interim spousal support, we disagree and vacate that portion of the judgment.  As to the issue of attorney fees, we agree and affirm.

## I. BACKGROUND

[¶2] Donald and Linda Williams were married on February 14, 2006.[1] On November 1, 2010, Donald instituted divorce proceedings in the District Court. *See* 19-A M.R.S. § 902(1)(H) (2016). Over the next five and a quarter years, in proceedings that wound their way through the District Court and the Business and Consumer Docket, the court issued a series of eight orders or judgments relevant to this appeal.

[¶3] On March 27, 2012, the court (*Mullen, J.*) ordered Donald to pay $300 per week in interim spousal support to Linda. In April of 2013, the court (*Horton, J.*) ordered the parties to sell their farm property located in Monmouth and ordered that the proceeds were to be divided into thirds. One third of the sale proceeds was awarded to each party, and one third was placed in an escrow account that could only be disbursed upon further court order. Because Donald was already delinquent in his payment of interim spousal support, however, the court deducted $5,100 from Donald's third and awarded that directly to Linda. Within weeks, Linda was again complaining that Donald continued to refuse to pay the ordered spousal support. The court next entered an order dated June 11, 2013, authorizing Linda to

---

[1] This was their second marriage to each other. The first marriage also ended in a divorce.

withdraw any unpaid interim spousal support from the escrow account.[2] After conducting a judicial settlement conference, the court (Portland, *Cole, J.*) entered a divorce judgment dated August 16, 2013, that, relevant to this appeal, ended Donald's obligation to pay any spousal support and awarded Linda the "remaining net proceeds of [the farm sale] in the proximate amount of $36,662.88 held in [the escrow account]."

[¶4]  Donald appealed the divorce judgment.  Linda immediately filed a motion asking that, during the appeal, Donald be required to pay interim spousal support out of his own funds, pointing out that the escrow account from which she had been receiving spousal support payments had been set aside to her in the divorce judgment.  On October 10, 2013, the court (*Dobson, J.*) issued an order stating that Linda could continue to withdraw interim spousal support from the escrow account but noting that the order was "without prejudice to either party" and stating that Linda "may request recovery of interim spousal support amounts paid from [the escrow] account from other funds set aside to [Donald] . . . and [Donald] may assert his position regarding this issue as well."

---

[2]  This was an amended order that corrected a clerical error in an order entered the previous day.

4

[¶5]  On February 7, 2014, in anticipation of the dismissal of the appeal, Linda signed a general release stating:

> IN CONSIDERATION OF Donald Williams's dismissal of the currently pending appeal of the Divorce Judgment in KEN-13-480, and his payment to me of $50,000.00, which is the amount of money he would owe me pursuant to the Divorce Judgment as of February 6, 2014, had the said Divorce Judgment not been appealed, and other good and valuable consideration, the receipt of which is hereby acknowledged, I, Linda Williams, also agree to dismiss said appeal in docket no. KEN-13-480, and agree to execute any documents necessary to perfect a dismissal of that appeal, *and further release and forever discharge Donald Williams, of and from any damages, costs, fees, attorney[] fees, or any other thing whatsoever on account of, or in any way growing out of or associated with the appeal filed by Donald Williams in KEN-13-480.*

(Emphasis added.)  On February 12, 2014, the parties voluntarily dismissed the appeal.  By that time, Linda had withdrawn $8,100—reflecting twenty-seven payments of $300—in interim spousal support payments from the escrow account.

[¶6]  In April of 2015, Donald filed a motion for contempt or to enforce, seeking to recover a horse trailer and title to a vehicle.  While that motion was still pending, in September of 2015, Linda filed a motion for post-judgment relief seeking the recovery of the $8,100 she had withdrawn from the escrow account during the appeal.  Although it held a consolidated hearing on both

motions on November 12, 2015, the court (*R.A. French, J.*) issued separate orders.

[¶7]   First, the court entered an order dated December 23, 2015, granting Linda's request based on its findings that Donald had not paid interim spousal support while the appeal was pending; the court had authorized Linda to take past due payments out of the escrow account; the interim support orders had not been stayed by the appeal; the court had expressly stated that Linda could request spousal support from Donald's funds; and Linda had withdrawn $8,100, diminishing the value of the property eventually awarded to her in the divorce judgment.  Then, in an order dated December 28, 2015, the court denied Donald's motion and granted Linda $6,000 in attorney fees based on its finding that Donald—who earned more per month than Linda and owned a company that paid some of his bills—was in a better financial position to bear the cost of the attorney fees.[3]

[¶8]   On Donald's motion, the court issued further findings and conclusions of law on February 16, 2016, stating that Linda's testimony at the hearing on both motions was credible; Donald's company had paid his

---

[3] The court found that Linda's income was $950 per month, although Linda testified that it was $970 per month.  This apparent clerical error is not, however, the basis for Donald's argument on appeal, and, in any event, constitutes harmless error.  *See* M.R. Civ. P. 61.

6

attorney fees in the divorce proceedings; and the general release had not relieved Donald of his obligation to pay interim spousal support because, among other reasons, Linda had not believed that the release pertained to spousal support and would not have signed it if she had. Donald appealed from the February 16, 2016, judgment, challenging portions of both judgments entered in December of 2015.

## II. DISCUSSION

### A. Interim Spousal Support

[¶9] We first address Donald's contention that the court erred in granting Linda's motion for post-judgment relief and awarding her $8,100 because Linda waived her right to be reimbursed for the decrease in the value of the escrow account when she signed the release. Where the language of a contract is unambiguous, we review that contract de novo as a question of law. *Brochu v. McLeod*, 2016 ME 146, ¶ 39, 148 A.3d 1220. Contractual language is "ambiguous [only] when it is reasonably susceptible of different interpretations." *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989 (quotation marks omitted).

[¶10] Because the language of the general release that Linda signed is unambiguous, the court erred in considering Linda's intent in signing it. The

document released Donald in plain and broad language from "any damages, costs, fees, attorney[] fees, *and any other thing whatsoever on account of, or in any way or growing out of or associated with the appeal.*"[4]  (Emphasis added.) The $8,100 in interim spousal support payments in question occurred as a direct result of Donald's appeal.  His appeal stayed the effect of the divorce judgment and resulted in the extension of the interim spousal support order. *See* M.R. Civ. P. 62(a); *Laqualia v. Laqualia*, 2011 ME 114, ¶¶ 27-28, 30 A.3d 838.  By its plain terms, the general release relieved Donald of any obligation to compensate Linda for those interim spousal support payments because they "grew out of" and were directly "associated with" the appeal.  We therefore vacate that portion of the judgment.

B.    Attorney Fees

[¶11]  Donald also challenges the court's award of $6,000 in attorney fees to Linda because the court based its decision, in part, on its finding that Linda's income is less than $1,000 per month, a finding that he contends is erroneous.  We review the award of attorney fees for an abuse of discretion, recognizing that "the court may consider the parties' relative ability to pay

---

[4]  The document is also clear that Linda's release was given "IN CONSIDERATION OF Donald Williams's dismissal of the currently pending appeal of the Divorce Judgment in KEN-13-480, and his payment to me of $50,000.00, which is the amount of money he would owe to me pursuant to the Divorce Judgment as of February 6, 2014."  Linda signed the release five days before the appeal was dismissed.

8

and overall fairness given the totality of the circumstances" in making such an award. *Wandishin v. Wandishin*, 2009 ME 73, ¶ 16, 976 A.2d 949.

[¶12] In awarding attorney fees to Linda on Donald's failed motion for contempt, the court credited Linda's testimony that she had miscalculated her income on a financial statement submitted to the court and that she in fact earned less than $1,000 per month working two part-time jobs as a bookkeeper. *See supra* n.3. Although the financial statement and Linda's estimate as to the wages she lost due to Donald's motion for contempt contradicted her testimony as to her monthly income, it was "squarely in the province" of the court as fact-finder to determine the weight and credibility of the evidence before it. *Sloan v. Christianson*, 2012 ME 72, ¶ 33, 43 A.3d 978.

[¶13] Nevertheless, even if the court erred in its finding as to Linda's monthly income, that finding was not the sole basis for the award of attorney fees. The court's conclusion that Donald was better able to bear the financial burden of the attorney fees was also supported by record evidence that Linda is in debt and has no savings or financial assets to speak of and that Donald owns valuable real estate and a company that has paid his attorney fees and his living expenses including his mortgages. Thus, given the totality of the circumstances, the court did not abuse its discretion in awarding attorney fees

to Linda. *See Starrett v. Starrett*, 2014 ME 112, ¶¶ 16-17, 101 A.3d 435 (holding that a factual error made by the trial court was harmless where the appellant failed to demonstrate prejudice resulting from it). We therefore affirm that portion of the judgment.

The entry is:

> Judgment vacated in part and affirmed in part.

---

JABAR, J., concurring in part and dissenting in part.

[¶14] I concur with the Court's opinion to the extent that it concluded that Donald was in a better financial position than Linda to bear the costs of Linda's attorney fees. I respectfully dissent, however, from the Court's conclusion that the release in question is a general release relieving Donald of his obligation to pay Linda spousal support that accrued during the appeal. Court's Opinion ¶ 10. Because the trial court properly considered the testimony of the parties in determining the scope of the release, I would affirm the trial court's order awarding Linda $8,100 in interim spousal support.

[¶15] The Court agrees with Donald's argument that the release signed by Linda prevented her from recovering the $8,100 interim spousal support which accrued during the pendency of the appeal. Court's Opinion ¶ 10. The

Court states that "[b]ecause the language of the general release that Linda signed is unambiguous, the [trial] court erred in considering Linda's intent in signing it." Court's Opinion ¶ 10. I disagree with the Court because neither the content of the release, which is ambiguous, nor Linda's testimony about it support the Court's conclusion that it was a general release.

[¶16] Pursuant to Maine contract law, to be enforceable, an agreement must be "sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties." *Barr v. Dyke*, 2012 ME 108, ¶ 13, 49 A.3d 1280 (quotation marks omitted). "If a release is 'absolute and unequivocal' in its terms, it 'cannot be explained by parol evidence and must be construed according to the language that the parties have seen fit to use.'" *2301 Cong. Realty, LLC v. Wise Bus. Forms, Inc.*, 2014 ME 147, ¶ 10, 106 A.3d 1131 (quoting *Norton v. Benjamin*, 220 A.2d 248, 253 (Me. 1966)). "Once an ambiguity is found then extrinsic evidence may be admitted and considered to show the intention of the parties." *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983). Language in a contract is ambiguous if it is reasonably susceptible to different interpretations. *Id.* "[T]he interpretation of ambiguous language is a question for the factfinder." *Id.* Any ambiguity in a contract should be construed

strictly against the drafter. *See State v. Palmer*, 2016 ME 120, ¶ 14, 145 A.3d 561; *Travelers Indem. Co. v. Bryant*, 2012 ME 38, ¶ 9, 38 A.3d 1267.

[¶17] Because the language of the release drafted by Donald's attorney is reasonably susceptible to multiple interpretations, the release is ambiguous. Several factors lead to this conclusion. First, the title of the document indicates that it is a "RELEASE OF ALL DEMANDS WITH REGARD TO APPEAL." This title is not in any way indicative of a "general release." Second, the first two lines narrow the scope of the release to "the currently pending appeal of the Divorce Judgment in KEN-13-480." Finally, the document releases Donald "from any damages, costs, fees, attorney[] fees, or any other thing whatsoever on account of, or in any way growing out of or associated with the appeal." This language—considered narrowly and construed against the drafter—is ambiguous in scope, because it does not define what claims or demands are "growing out of or associated with the appeal." Because the judgment awarding interim spousal support that Donald was obligated to pay was not appealed, it is not clear whether the accrued spousal support is included within the scope of the release. For these reasons, the release is ambiguous as to its scope.

12

[¶18]   When a contract is ambiguous, the trial court is permitted to consider parol evidence to interpret it. *Portland Valve, Inc.*, 460 A.2d at 1387. We then review the trial court's determination for clear error. *Brochu v. McLeod*, 2016 ME 146, ¶ 39, 148 A.3d 1220 (stating that "if [a] contract is ambiguous, then its interpretation is a question of fact for the factfinder, in which case we review the trial court's conclusion for clear error" (quotation marks omitted)).

[¶19]   Although it did not specifically find that the release was ambiguous, the trial court did consider parol evidence in determining the scope of the release.  The evidence supports the trial court's conclusion that the release did not bar Linda's claim for spousal support.  Linda testified that in executing the release she never intended to release her right to spousal support payments, and did not believe that the release pertained to spousal support.  During his testimony at the hearing, Donald did not refute Linda's contentions or make any statement as to the scope of the release. Additionally, Donald's attorney acknowledged that the only issue raised in Donald's appeal of the divorce judgment concerned a stock pledge agreement. The trial court found Linda's testimony to be credible and concluded that the

release did not apply to Donald's obligation to pay spousal support during the pendency of the appeal.

[¶20]  In conclusion, the evidence supports the trial court's judgment ordering $8,100 in interim spousal support be paid to Linda.  Therefore, I would affirm the court's decision in its entirety, including its award of attorney fees.

---

J. Mitchell Flick, Esq., Winthrop, for appellant Donald J. Williams

Karen M. Burke, Esq., Law Office of Karen M. Burke, Winthrop, for appellee Linda Williams

Augusta District Court docket number FM-2010-496
FOR CLERK REFERENCE ONLY