MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 42
Docket:       And-18-313
Argued:       March 4, 2019
Decided:      March 14, 2019

Panel:        ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

WILMINGTON SAVINGS FUND SOCIETY, FSB

v.

MATTHEW J. NEEDHAM et al.

PER CURIAM

[¶1]  Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as Trustee for Hilldale Trust, appeals from a judgment in favor of Matthew J. Needham[1] entered in the Superior Court (Androscoggin County, *MG Kennedy, J.*) after a bench trial on Wilmington's foreclosure complaint.  For the reasons discussed below, we vacate the judgment and remand the matter for entry of judgment for Wilmington.

## I.  CASE HISTORY

[¶2]  The following facts are undisputed.  In August 2005, Needham signed a promissory note in favor of EquiFirst Corporation that was secured by

---

[1]  In addition to Needham, Nicole L. Leighton is a named defendant in this matter.  She has not participated in this appeal.  For the sake of clarity, Needham will be referred to individually throughout this opinion.

2

a mortgage on his real property situated in Auburn. Needham defaulted on that loan in August 2014 when he stopped making the required payments. In September 2016, loan servicer BSI Financial Services sent Needham a notice of the right to cure on behalf of Ventures Trust[2]—the then-holder of the note and mortgage by virtue of assignment—as required by 14 M.R.S. § 6111(1) (2018). Ventures Trust thereafter filed a foreclosure complaint in January 2017.

[¶3]   In December 2017, Ventures Trust filed a motion seeking to substitute Wilmington Savings Fund, FSB, as plaintiff because it had transferred the mortgage and note by assignment to Wilmington, as trustee for Hilldale Trust, in October 2017. The motion was granted in January 2018.

[¶4]   A short bench trial was held in April 2018, after which Needham stipulated that Wilmington's complaint and filings were proper, its various exhibits were admissible, and he had in fact defaulted under the terms of the note and mortgage. The parties agreed that the only issue to be decided by the court was whether 14 M.R.S. § 6111(1) requires a mortgagee itself—and not its loan servicer acting as its agent—to send the notice of the right to cure. Resolution of that question would be dispositive of the case. In lieu of

---

[2]   The complete designation of Ventures Trust is "Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC, its trustee."

presenting their arguments at trial, the parties agreed to submit written arguments.

[¶5]  The court entered judgment for Needham on July 10, 2018.  In its judgment, the court explained:

> The clearest guidance available to this [c]ourt in deciding this issue is the oft-repeated mandate that a plaintiff seeking a judgment of foreclosure must strictly comply with statutory requirements. *See*, *e.g.*, [*Bank of Am., N.A. v.*] *Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700; [*Chase Home Fin. LLC v.*] *Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508; *Camden Nat'l Bank v. Peterson*, 2008 ME 85, ¶ 21, 948 A.2d 1251.  Section 6111 plainly requires notice to be "given by the mortgagee."  14 M.R.S.A. § 6111(1).  The term "mortgage servicer" appears elsewhere in section 6111, *e.g.*, *id*. § 6111(1-A)(D), (E), indicating the Legislature recognizes that a servicer is a distinct entity from a mortgagee.  The Legislature has not designated loan servicers as entities that can send notice to mortgagors in satisfaction of section 6111.
>
> Absent any indication from the Law Court or the Legislature that an exception may be made when a loan servicer sends notice on behalf of a mortgagee, this [c]ourt finds, under a strict interpretation of the statute, that notice must be sent by the mortgagee.  In this case, because notice was not sent by the mortgagee, but rather by the loan servicer, the notice was insufficient to satisfy the requirements of section 6111.  Thus, Plaintiff has not satisfied its burden to provide evidence of each of the elements of proof necessary to support a judgment for foreclosure.  Judgment will be entered for Defendants.

[¶6]  Wilmington timely appealed.  M.R. App. P. 2B(c)(1).

## II. LEGAL ANALYSIS

[¶7]  Wilmington argues that the court's judgment ignores the common law principles of agency, as well as the plain language and legislative purpose of section 6111.

## A.    Agency in Common Law

[¶8]   "Agency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his [or her] behalf and subject to his [or her] control, and consent by the other so to act." *Libby v. Concord Gen. Mut. Ins. Co.*, 452 A.2d 979, 981 (Me. 1982). Generally, "[a] person . . . subject to a duty[] to perform an act . . . can properly appoint an agent to perform the act . . . unless public policy or the agreement with another requires personal performance." Restatement (Second) of Agency § 17 (Am. Law Inst. 1958); *see also* Restatement (Third) of Agency § 3.04 cmt. c (Am. Law Inst. 2006) ("A person may delegate performance of an act if its legal consequences for that person are the same whether the act is performed personally or by another."); *Stenzel v. Dell, Inc.*, 2005 ME 37, ¶ 37, 870 A.2d 133 (quoting Restatement (Second) of Contracts § 318(1) (Am. Law Inst. 1981)) ("An obligor can properly delegate the performance of his duty to another unless the delegation is contrary to public policy or the terms of his promise.").

[¶9] With that background, this appeal presents three questions: (1) whether the loan servicer, BSI, was acting as an agent of the mortgagee at the time it sent the notice of the right to cure to Needham; (2) whether the mortgage contract requires personal performance by the mortgagee when sending such a notice; and (3) whether section 6111 abrogates the common law so that, regardless of the existence of an agency relationship, the mortgagee itself must send the notice.

[¶10] The answer to the first question is implicit in the narrow scope of the issue presented to the trial court by agreement of the parties. The parties asked the court to determine whether a loan servicer may give a notice of the right to cure on behalf of a mortgagee pursuant to section 6111(1), but—as the parties confirmed at oral argument—did not dispute that BSI was a loan servicer acting on behalf of the mortgagee in this case. Therefore, by definition, BSI was acting as the mortgagee's agent. Thus, the dispositive issues presented here are entirely questions of law. We address the other two questions in turn.

B.    Agency and the Mortgage Contract

[¶11] The court made the following supported findings regarding the mortgage contract:

> While not dispositive here, the mortgage contract in this case similarly requires notice of default and right to cure to be sent by

the "Lender." The mortgage's definition of "Lender" includes "any Person who takes ownership of the Note and this Security Instrument." "Loan Servicer" is separately defined as "[t]he entity that collects . . . Periodic Payments due under the Note and this Security Instrument and also performs other mortgage loan servicing obligations under the Note, this Security Agreement and Applicable Law." Clearly, the mortgage contemplates that the Lender and the Loan Servicer are not the same entity.

(alterations in original) (citations omitted).

[¶12] When "the language of a contract is unambiguous, we review that contract de novo as a question of law." *Williams v. Williams*, 2017 ME 94, ¶ 9, 161 A.3d 710. While the court was correct that the lender and the loan servicer are defined as distinct entities in the mortgage contract, the language of the mortgage contract does not require personal performance by the mortgagee when giving notice, and it is not a contractual duty that is deemed nondelegable by public policy. *Cf. Pinkham v. Libbey*, 93 Me. 575, 577, 45 A. 823 (1900) ("[A] contract for personal services involving the exercise of individual skill and judgment . . . can be performed only by the person named.").

[¶13] Looking to the terms of the mortgage contract, Needham does not suggest any difference in legal effect when an otherwise valid notice is sent by a lender's agent and not the lender itself. We therefore conclude that the mortgage contract does not prohibit the mortgagee from delegating to its agent loan servicer the mortgagee's duty to send the notice of the right to cure.

C.    Agency and Section 6111

[¶14]  Title 14 M.R.S. § 6111(1) prohibits enforcement of a residential mortgage until thirty-five days after written notice of the right to cure "is given by the mortgagee to the mortgagor."  The court determined that because other subsections of the statute, *see id*. § 6111(1-A)(D)-(E), differentiate between mortgagees and loan servicers, the Legislature did not intend to designate servicers as entities that can send notice to mortgagors.

[¶15]  "We interpret the meaning of a statute de novo by analyzing its plain language . . . ." *Bank of Am., N.A. v. Cloutier*, 2013 ME 17, ¶ 12, 61 A.3d 1242. "A plain language interpretation should not be confused with a literal interpretation . . . .  Rather, courts are guided by a host of principles intended to assist in determining the meaning and intent of a provision even within the confines of a plain language analysis."  *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 20, 107 A.3d 621.

[¶16]  When analyzing the interplay between section 6111(1) and the common law of agency we look to "the well-established rule of statutory construction that the common law is not to be changed by doubtful implication [or] be overturned except by clear and unambiguous language, and that a statute in derogation of it will not effect a change thereof beyond that clearly

indicated either by express terms or by necessary implication." *Batchelder v. Realty Res. Hosp., LLC*, 2007 ME 17, ¶ 23, 914 A.2d 1116; *see also Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 10, 847 A.2d 1169 ("Generally, Legislatures are deemed to draft legislation against the backdrop of the common law, and do not displace it without directly addressing the issue."). Also informing our interpretation of section 6111(1) is the directive from the Legislature that, "unless such construction is inconsistent with the plain meaning of the enactment . . . . [w]hen an act that may be lawfully done by an agent is done by one authorized to do it, his principal may be regarded as having done it." 1 M.R.S. § 71(1) (2018).

[¶17]    Although section 6111 distinguishes between mortgagees, mortgage servicers, and agents of mortgagees in its various subsections, there is no clear statement or necessary implication that the Legislature intended to abrogate the long-established principles of agency by simply stating that notice "is given by the mortgagee." *Accord U.S. Bank Trust, N.A. v. Jones*, 330 F. Supp. 3d 530, 536 (D. Me. 2018), *appeal filed* No. 18-1719 (1st Cir. Aug. 1, 2018) ("[S]uch a narrow interpretation [of section 6111(1)] ignores well established agency principles without any indication that the Maine Legislature intended this result."). Nor does the plain meaning of the statute suggest that the

Legislature intended to depart from its general rule of statutory construction that a principal is legally regarded as having done an act that was done on its behalf by its agent acting within the scope of its authority.

[¶18] This interpretation is consistent with the purpose of the statute, which is to prevent the unnecessary loss of a mortgagor's home, and does not alter our mandate that lenders must strictly comply with its requirements. *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 31, 96 A.3d 700; *Sinclair v. Sinclair*, 654 A.2d 438, 440 (Me. 1995). Moreover, Needham does not—and seemingly cannot—suggest any legal or practical difference between an agent loan servicer giving the notice on behalf of the mortgagee and the mortgagee itself giving the notice. On the other hand, his suggested interpretation—which the trial court adopted—is so narrow that it would prohibit even an attorney from giving a notice of the right to cure on behalf of a mortgagee client. We cannot say that the Legislature intended such a constricted reading. Accordingly, we conclude that a mortgagee may delegate to an agent—such as a loan servicer— its duty to provide a notice of the right to cure pursuant to section 6111(1).

D.     Conclusion

[¶19] Because neither the mortgage contract nor section 6111(1) prohibited the mortgagee from delegating to an agent loan servicer its duty to

give a notice of the right to cure to Needham, we vacate the court's decision and remand the matter for entry of judgment for Wilmington.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

Catherine R. Connors, Esq., and John J. Aromando, Esq., Pierce Atwood LLP, Portland, and Nicholas A. Danella, Esq. (orally), Bradley Arant Boult Cummings LLP, Birmingham, Alabama, for appellant Wilmington Savings Fund Society, FSB

John D. Clifford, IV, Esq. (orally), Clifford & Golden, P.A., Lisbon Falls, for appellee Matthew J. Needham

Ryan P. Dumais, Esq., Eaton Peabody, Brunswick, for amicus curiae Maine Bankers Association

Brett R. Leland, Esq., and Jonathan M. Dunitz, Esq., Verrill Dana, Portland, for amicus curiae Maine Association of Mortgage Professionals

Androscoggin County Superior Court docket number RE-2017-3
FOR CLERK REFERENCE ONLY